LEWIS, C.J.
In this case, we review the decision of the Fourth District Court of Appeal in Yisrael v. State, 938 So.2d 546 (Fla. 4th DCA 2006). In Yisrael, the Fourth District certified that its decision is in direct conflict with the decision of the First District Court of Appeal in Gray v. State, 910 So.2d 867 (Fla. 1st DCA 2005). We therefore possess jurisdiction to resolve this conflict. See art. V, § 3(b)(4), Fla. Const. The sole meritorious issue presented for review is whether the documents the State proffered to establish the defendant’s status as a habitual violent felony offender (“HVFO”) are admissible under either the business- or public-records exceptions to the rule against hearsay. As explained below, we hold that the “Crime and Time Reports” issued by the Department of Corrections (“DOC” or “Department”) are admissible as public records so long as they are properly authenticated. However, we concurrently hold that DOC release-date letters — standing alone — constitute inadmissible hearsay.
I. BACKGROUND
On January 14, 2004, Defendant-Petitioner Abraham Yisrael (a/k/a Eugene Lumsden) was convicted of cocaine trafficking and possession of a firearm by a convicted felon in Broward County Circuit Court.[1] The State later filed notice of its intent to seek an HVFO sentence enhancement. During sentencing, the trial judge relied on a DOC release-date letter, which indicated that Mr. Yisrael committed the target offenses within five or fewer years *954 of having been released for his predicate felonies. Based on this letter, Yisrael qualified as an HVFO under section 775.084, Florida Statutes (2001).[2]
Mr. Yisrael did not object to the trial judge’s consideration of the release-date letter during sentencing. Nonetheless, Yisrael later filed a timely Florida Rule of Criminal Procedure 3.800(b)(2) motion to correct sentence, alleging that (1) the letter was based upon inadmissible hearsay; (2) the letter was the only evidence the State produced to support its HVFO sentencing request; and (3) the trial court consequently could not have properly sentenced him as an HVFO.[3] Yisrael, however, neither attacked the validity of his predicate felonies, nor did he challenge the accuracy of his predicate-offense release date. The circuit court denied Yisrael’s rule 3.800(b)(2) motion, and Yisrael appealed to the Fourth District Court of Appeal.
On appeal, sitting en banc, the Fourth District affirmed the order of the circuit court denying Yisrael’s rule 3.800(b)(2) motion. Yisrael v. State, 938 So.2d 546, 547-50 (Fla. 4th DCA 2006). The court reasoned that the DOC letter was admissible under the public-records exception to the rule against hearsay. In the course of its decision, the Fourth District receded from its prior opinion in Sutton v. State, 929 So.2d 1105 (Fla. 4th DCA 2006), and certified direct conflict with the First District’s decision in Gray v. State, 910 So.2d 867 (Fla. 1st DCA 2005), which held that a nearly identical DOC letter constituted inadmissible hearsay.
However, apparently unknown on appeal to the Fourth District, the Public Defender’s Office, and the State, the trial-level prosecutor actually included an attachment with the supposedly objectionable DOC letter (collectively labeled “Exhibit C”), which undermined Mr. Yisrael’s hearsay objection and rendered Yisrael factually distinguishable from Gray and Sutton. See Appendix (“Exhibit C”). This attachment was included in the record filed with this Court, and is an example of what Florida courts have generally referred to as the DOC’s “Crime and Time Reports.” The report provided under seal in this case clearly indicated that Mr. Yisrael’s predicate-felony release date was “04/08/98.” The decisions of the First District in Desue v. State, 908 So.2d 1116 (Fla. 1st DCA 2005), and Gray each specified that this type of report is admissible, despite a hearsay objection, as either a public or business record. See Desue, 908 So.2d at 1117-18; Gray, 910 So.2d at 869. Moreover, Sutton expressly followed Gray. See Sutton, 929 So.2d at 1108 (citing Gray in support of its holding). Therefore, if the Fourth District had been informed of this important fact, its opinion overruling Sutton and declining to follow Gray would have been unnecessary.[4] This Court’s dis *955 cretionary review follows from the Fourth District’s certification of direct conflict between its decision in Yisrael and the First District’s decision in Gray. See Yisrael v. State, 938 So.2d 546, 550 (Fla. 4th DCA 2006), review granted, 956 So.2d 458 (Fla.2007) (table).
II. ANALYSIS
The Fourth District crafted its Yisrael opinion under the assumption that it was considering exclusively the admissibility of a stand-alone DOC release-date letter. Therefore, to resolve the increasing confusion and at least apparent conflict surrounding this issue, our opinion addresses both the inadmissibility of stand-alone release-date letters and the admissibility of properly authenticated DOC Crime and Time Reports. In addressing this hearsay issue, we first explain that a DOC release-date letter is not a business record, whereas a Crime and Time Report may constitute such a record if properly authenticated. We then clarify that a release-date letter — standing alone — is not a public record, but that this type of letter may be used to authenticate an attached Crime and Time Report. We conclude by holding that when the State provides a Crime and Time Report, and properly authenticates the report by attaching a signed and sealed release-date letter, the combined document is admissible as a public record to establish a defendant’s HVFO status.
A. The Business-Records Exception
The State contends that the DOC release-date letter is admissible as a business record. However, by itself, the letter is not admissible under the business-records exception. Out-of-court statements offered to prove the truth of the matter asserted are inadmissible unless the statements fall under a recognized exception to the rule against hearsay. See § 90.802, Fla. Stat. (2004).[5] Here, the DOC release-date letter read as follows:
I, JOYCE HOBBS, CORRECTIONAL SERVICES ADMINISTRATOR, CENTRAL RECORDS OFFICE, STATE OF FLORIDA DEPARTMENT OF CORRECTIONS, DO HEREBY CERTIFY THAT THIS SEAL IS THE OFFICIAL SEAL OF THE FLORIDA DEPARTMENT OF CORRECTIONS. I ALSO CERTIFY THAT THE LAST RELEASE DATE FOR INMATE EUGENE LUMSDEN [AJKJA ABRAHAM YISRAEL], DC# 617617, B/M, DOB: 1/1963, WAS APRIL 08, 1998, FOR CASE #89- *956 20161, 89-20162 — BROWARD COUNTY, FLORIDA.
GIVEN UNDER MY HAND AND SEAL, THIS FEBRUARY 04, 2004.
[SIGNATURE]
JOYCE HOBBS,
CORRECTIONAL SERVICES ADMINISTRATOR
(Emphasis supplied.)
Neither party disputes the fact that the State offered the DOC release-date letter to prove Mr. Yisrael’s release date for his predicate felonies, which were convictions for arson and robbery. Furthermore, there is no dispute that the letter constituted a “statement” under section 90.801(1)(a)(1), Florida Statutes (2004). See id. (“A ‘statement’ is: 1. An oral or written assertion.... ”). Finally, neither party claims that Ms. Hobbs made this statement in court, while relying upon appropriately admitted and authenticated State records. Therefore, the DOC release-date letter is a classic example of hearsay: “Hearsay is defined as a statement, other than one made by the declar-ant while testifying at trial or hearing, offered to prove the truth of the matter asserted.” Banks v. State, 790 So.2d 1094, 1097 (Fla.2001) (citing § 90.801(1)(c), Fla. Stat. (1997)). In its attempt to prove Yis-rael’s release date, the State, as the evi-dentiary proponent, thus had the burden of supplying a proper predicate to admit this evidence under an exception to the rule against hearsay. See § 90.802, Fla. Stat. (2004) (“Except as provided by statute, hearsay evidence is inadmissible.”); Lowenthal v. State, 699 So.2d 319, 320 (Fla. 2d DCA 1997) (“[T]he state must furnish proof of ... the date that the defendant was released from prison imposed for the last felony conviction .... ”); § 775.084(3)(a)(4), Fla. Stat. (2001) (mandating a preponderance-of-the-evidence standard).
 Florida’s business-records exception appears in section 90.803(6)(a), Florida Statutes (2004).[6] To secure admissibility under this exception, the proponent must show that (1) the record was made at or near the time of the event; (2) was made by or from information transmitted by a person with knowledge; (3) was kept in the ordinary course of a regularly conducted business activity; and (4) that it was a regular practice of that business to make such a record. See, e.g., Jackson v. State, 738 So.2d 382, 386 (Fla. 4th DCA 1999). Additionally, the proponent is required to present this information in one of three formats. First, the proponent may take the traditional route, which requires that a records custodian take the stand and testify under oath to the predicate requirements. See § 90.803(6)(a), Fla. Stat. (2004). Second, the parties may stipulate to the admissibility of a document as a business record. See, e.g., Kelly v. State Farm Mut. Auto. Ins., 720 So.2d 1145, 1146 (Fla. 5th DCA 1998) (holding that the parties stipulated to the admissibility of *957 medical records under the business-records exception); but see Gordon v. State, 787 So.2d 892, 894 (Fla. 4th DCA 2001) (holding that the State and defense counsel’s stipulation regarding the defendant’s release date was not sufficient to relieve the State of its burden to prove the defendant’s release date by a preponderance of the evidence). Third and finally, since July 1, 2003, the proponent has been able to establish the business-records predicate through a certification or declaration that complies with sections 90.803(6)(e) and 90.902(11), Florida Statutes (2004). The certification — under penalty of perjury— must state that the record:
(a) Was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person having knowledge of those matters;
(b) Was kept in the course of the regularly conducted activity; and
(c) Was made as a regular practice in the course of the regularly conducted activity!)]
§ 90.902(ll)(a)-(c), Fla. Stat. (2004).
Here, a records custodian did not appear as a witness, the parties did not stipulate to admissibility, and the State did not provide a certification under section 90.902(11). Even if the State had attempted to satisfy the business-records predicate — exclusively with regard to the release-date letter — it would have failed. “If evidence is to be admitted under one of the exceptions to the hearsay rule, it must be offered in strict compliance with the requirements of the particular exception.” Johnson v. Dep’t of Health & Rehab. Servs., 546 So.2d 741, 743 (Fla. 1st DCA 1989). The DOC release-date letter, standing alone, falls short of each predicate requirement.
First, the letter was not made at or near the time of Mr. Yisrael’s predicate-felony release date — April 8, 1998. Instead, Ms. Hobbs certified that she drafted the letter on February 4, 2004 — nearly six years after the fact. Second, Ms. Hobbs drafted the letter upon the prosecutor’s request, exclusively for the purpose of the instant prosecution, not. as part of a regularly conducted activity. “When a document is made for something other than a regular business purpose, it does not fall within the business record exception,” and “[w]henever a record is made for the purpose of preparing for litigation, its trustworthiness is suspect and should be closely scrutinized.” Charles W. Ehrhardt, Florida Evidence § 803.6, at 876 n. 3, 877 (2007 ed.) (citing, e.g., United States v. Kim, 595 F.2d 755, 760-64 (D.C.Cir.1979) (rejecting an argument that a document created solely for litigation purposes was admissible as a business-records summary of otherwise admissible records, which were not produced)).[7] Similar to the telefax at issue in Kim, the release-date letter cannot be admitted as a summary of otherwise admissible records, which were not produced. See also Thompson v. State, 705.So.2d 1046, 1048 (Fla. 4th DCA 1998) (“[T]he business-records exception to the hearsay rule ... does not authorize hearsay testimony concerning the contents of business records which have not been admitted into evidence.”); United States v. Marshall, 762 F.2d 419, 423-28 (5th Cir.1985) (substantially similar). The letter itself is not a record; rather, as the First District observed in Gray,
*958 [the DOC letter] constituted hearsay, and the State proved no proper predicate for its admission under any exception to the rule excluding hearsay. The document fails to identify the official records on which it relied, if any, does not state that it is a true and correct representation of any record, and does not say where or in whose custody any original official or business records are kept. ... [The] statement is essentially a (defective) affidavit devoid of any reference to records the DOC maintains ....
Gray, 910 So.2d at 869-70 (emphasis supplied). See also Desue, 908 So.2d at 1116—18 (holding the DOC’s “Crime & Time Reports” admissible as business records, and commenting that “we [are not] concerned here with an affidavit prepared for use in a particular case masquerading as a business record.” (emphasis supplied)).
Third, the DOC letter does not state that it was drafted “[b]y or from information transmitted by a person with knowledge.” § 90.803(6)(a), Fla. Stat. (2004). Fourth and finally, the DOC produces its Crime and Time Reports as a regular practice in the ordinary course of its business — i.e., its statutorily mandated duty[8] to keep track of its inmate population. See Desue, 908 So.2d at 1117. Conversely, the DOC produces release-date letters at the request of prosecutors, exclusively for the purpose of litigation, not as part of its regularly conducted activities. See, e.g., Gray, 910 So.2d at 869-70.
In Yisrael, the State could have secured the admission of the attached Crime and Time Report as a business record if it had supplied the authentication required by sections 90.803(6) and 90.902(11). See, e.g., Parker v. State, 973 So.2d 1167, 1168-69 (Fla. 1st DCA 2007) (holding that a DOC Crime and Time Report is admissible as a business record where a DOC records custodian supplies a certification that strictly complies with sections 90.803(6) and 90.902(11), Florida Statutes), notice invoking discretionary jurisdiction filed, No. SC07-1847 (Fla. Oct. 2, 2007). However, the State did not provide a section 90.902(11) certification in this case; instead, it contends that the release-date letter alone is admissible as a business record. We do not agree with this contention. We therefore hold that a DOC release-date letter is not a business record because it was not (1) made at or near the time of the defendant’s release date; (2) made by or from information transmitted by a person with knowledge; (3) kept in the ordinary course of a regularly conducted business activity; or (4) created as a regular practice.
B. The Public-Records Exception
The State also contends that the DOC release-date letter, in and of itself, is admissible as a public record under section 90.803(8), Florida Statutes (2004).[9] We do *959 not agree with this contention because this type of letter does not pass muster under the relevant evidentiary analysis. Where government records are at issue, the records are often admissible both as business records and as public records; but it is generally easier to obtain admission as a public record. See Ehrhardt, supra § 803.8, at 905. For example, in contrast to business records, the State is not required to create public records at or near the time of the memorialized matter. Compare § 90.803(6), Fla. Stat. (2004), with § 90.803(8), Fla. Stat. (2004). Further, an evidentiary proponent may easily authenticate public records by requesting that the State supply the record under seal. See § 90.902(1), Fla. Stat. (2004).
“Public record,” as used in section 90.803(8), only encompasses two types of records. The first type includes records setting forth “the activities of the office or agency.” § 90.803(8), Fla. Stat. (2004); Eh-rhardt, supra § 803.8, at 906. And the second type includes records setting forth “matters observed pursuant to [a] duty imposed by law as to matters which there was a duty to report.” § 90.803(8), Fla. Stat. (2004); Ehrhardt, supra § 803.8, at 906. Moreover, “matters-observed” public records must be based upon a public official’s first-hand observation of an event. See Ehrhardt, supra § 803.8, at 906; Kimbrough v. State, 852 So.2d 335, 335-36 (Fla. 5th DCA 2003).
The release-date letter at issue in this case is not an “aetivities-based” public record. The DOC is “responsible for the inmates and for the operation of, and shall have supervisory and protective care, custody, and control of, all buildings, grounds, property of, and matters connected with, the correctional system.” § 945.04(1), Fla. Stat. (2001). However, drafting a gratuitous hearsay letter for the purpose of litigation is not a regular activity of the DOC. Rather, creating and maintaining Crime and Time Reports is the relevant DOC activity. See, e.g., Parker, 973 So.2d at 1168-69; Desue, 908 So.2d at 1117-18. Release-date letters do not memorialize any DOC activity; instead, they assert a release date without reference to the actual documents the DOC uses to maintain accurate release dates for its inmate population. See, e.g., Parker, 973 So.2d at 1168-69; Desue, 908 So.2d at 1117-18; Gray, 910 So.2d at 869. Thus, the release-date letter alone is not admissible under the first prong of section 90.803(8) because it does not memorialize a DOC activity.
The release-date letter is also not a “matters-observed” public record:
[T]o be admitted under this portion of the exception: (1) the source of the information must have personal knowledge of the information recorded, as the phrase “matters observed” implies, (2) the source must have had a legal duty to both observe and report the information, and (3) the record in question must be one that the public agency or office is required by law to prepare.
Ehrhardt, supra § 803.8, at 908 (emphasis supplied). Here, Ms. Hobbs did not allege that she had personal knowledge of Mr. Yisrael’s release date, and the DOC did not have a legal duty to create a litigation-specific letter for the assistant state attorney. Rather, the DOC had a statutory duty to create and maintain its Crime and Time Reports, which are the actual records the DOC relies upon to keep track of inmates’ crimes, sentences, and release dates. See § 945.04(1), Fla. Stat. (2001); Parker, 973 So.2d at 1168-69; Desue, 908 So.2d at 1117-18; Gray, 910 So.2d at 869. Therefore, the release-date letter alone is not admissible under the second prong of section 90.803(8) because it does not memorialize a matter observed and recorded pursuant to a legal duty.
*960 In contrast, the Crime and Time Report attached and included in exhibit C, which the parties and the Fourth District inadvertently overlooked in the discussion below, is a public record. See § 90.803(8), Fla. Stat. (2004); Desue, 908 So.2d at 1117-18. Crime and Time Reports memorialize a regular DOC activity: the efforts of the Department to accurately record and maintain records of inmates’ crimes, sentences, and release dates, and we hold that section 945.04(1), Florida Statutes, imposes a statutory duty upon the DOC to create and maintain records regarding “matters connected with ... the correctional system.” Furthermore, the signed DOC release-date letter — written under seal — may be viewed as a means of authenticating the attached Crime and Time Report. § 90.902(1), Fla. Stat. (2004) (signed public records offered under seal are self-authenticating).
Here, we conclude that the Crime and Time Report is an admissible public record because: (1) the State submitted the release-date letter and the Crime and Time Report as one combined record during Yis-rael’s sentencing proceeding; (2) the release-date letter certified Yisrael’s former name, offense identification numbers, and release date; (3) the attached Crime and Time Report contained this same information; and (4) the DOC records custodian signed the letter, which was written under seal. Hence, the combined record constituted an “activities-based” public record, which the State authenticated under section 90.902(1), Florida Statutes. Section 90.902(1) merely requires that the submitted document bear the signature of the records custodian attesting to the authenticity of the document and to the authenticity of the document’s seal. See § 90.902(1), Fla. Stat. (2004); Ehrhardt, supra § 902.2, at 1045. Here, Joyce Hobbs certified the document’s seal and certified the accuracy of all the relevant information contained in Mr. Yisrael’s attached Crime and Time Report. Therefore, the combined record, not the release-date letter itself, was admissible as a public record, which the records custodian properly authenticated under seal. See §§ 90.803(8), 90.902(1), Fla. Stat. (2004).
III. CONCLUSION
In sum, we conclude that DOC release-date letters alone are not admissible under either the business- or public-records exceptions because they are not records under the relevant statutory definitions. A DOC release-date letter, standing alone,
fails to identify the official records on which it relied, if any, does not state that it is a true and correct representation of any record, and does not say where or in whose custody any original official or business records are kept. ... [The letter] is essentially a (defective) affidavit devoid of any reference to records the DOC maintains....
Gray, 910 So.2d at 869-70 (emphasis supplied).
There is, however, no applicable legal impediment to the State and the DOC using a signed release-date letter, written under seal, as a means of authenticating an attached DOC Crime and Time Report, which then renders the entire report admissible as a public record. See § 90.902(1), Fla. Stat. (2004). Moreover, as the First District explained in Parker, the State may have a second means of authenticating a DOC Crime and Time Report: the Department may attach a section 90.902(11) certification to the report, which satisfies the business-records admissibility predicate. See Parker, 973 So.2d at 1168-69; § 90.902(11), Fla. Stat. (2004).
Nevertheless, in the case at bar, the Fourth District incorrectly held that the DOC release-date letter alone was admissi *961 ble, in and of itself, as a public record. See Yisrael, 938 So.2d at 549-50. Therefore, we disapprove the reasoning and the rule of law articulated by the Fourth District, but we approve the ultimate result because, apparently unknown to appellate counsel and the Fourth District, the release-date letter — written under seal — provided in this case was simply used as a permissible means of authenticating an attached Crime and Time Report. See §§ 90.803(8), 90.902(1), Fla. Stat. (2004). We also approve the decision of the First District in Gray v. State, 910 So.2d 867 (Fla. 1st DCA 2005), to the extent that it holds that DOC release-date letters, standing alone, constitute inadmissible hearsay. Finally, we caution that in appropriate cases, both the business- and public-records exceptions are subject to “trustworthiness” exclusions (i.e., if the records— despite their otherwise admissible status— show a lack of trustworthiness, courts may deem the records inadmissible).[10] See §§ 90.803(6)(a), 90.803(8), Fla. Stat. (2004). In the future, the State and the DOC should prove recidivist defendants’ predicate-offense release dates through Crime and Time Reports, and should use one or both of the two permissible means of authenticating these reports: (1) business-records certification under sections 90.803(6)(c) and 90.902(11); or (2) public-records authentication under seal as provided by section 90.902(1). See Parker, 973 So.2d at 1168-69; §§ 90.803(6)(c), 90.902(1), 90.902(11), Fla. Stat. (2004). We remand for further proceedings consistent with this opinion.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
*962 [APPENDIX]
[[Image here]]
*963 [[Image here]]
*964 [[Image here]]
*965 [[Image here]]
*966 [[Image here]]

. Mr. Yisrael committed the target offenses on February 21, 2001.

.Yisrael was convicted of arson and robbery on July 10, 1992 (both of which are predicate felonies under section 775.084(1)(b)(1), Florida Statutes (2001)), and according to the DOC letter, the State released him on April 8, 1998, after Yisrael served sentences for those offenses. Yisrael committed his current cocaine-trafficking and felon-in-possession offenses on February 21, 2001, nearly three years after having been released for his 1992 felony convictions. Cf. § 775.084(1)(b)(2)(b), Fla. Stat. (2001) (permitting HVFO sentencing if “[t]he felony for which the defendant is to be sentenced was committed ... within 5 years of the defendant's release from a prison sentence ... that [wa]s imposed as a result of a prior conviction for an enumerated felony.” (emphasis supplied)).

. Neither party has addressed the propriety of the application of a rule 3.800(b)(2) claim. Therefore, we do not address this issue in the instant case.

. Despite this factual oversight, conflict still exists in this case based on the four-corners rule — i.e., Yisrael, as written, conflicts with Gray. Compare Yisrael, 938 So.2d at 550 (find *955 ing the DOC release-date letter admissible under the public-records exception and stating that "[u]nder the facts and circumstances presented here, we do not perceive any necessity to read into the public records exception, a requirement that a statement under seal also attach copies or identify such physical papers or electronic data from which the declarant derived the criminal history information”), with Gray, 910 So.2d at 869 (finding that the DOC release-date letter was inadmissible “under any exception to the rule excluding hearsay,” and noting that Gray did not involve "duly authenticated 'Crime and Time Reports,’ like the computer printout that came in evidence in Desue v. State, 908 So.2d 1116 (Fla. 1st DCA 2005)” (emphasis supplied)). See Gandy v. State, 846 So.2d 1141, 1144 (Fla.2003) (outlining the four-corners conflict-jurisdiction rule).

. Rules of evidence are generally considered rules of procedure, and hence, retroactive application does not violate the Ex Post Facto Clauses of the federal and Florida Constitutions. See, e.g., Hopt v. Territory of Utah, 110 U.S. 574, 589, 4 S.Ct. 202, 28 L.Ed. 262 (1884); Glendening v. State, 536 So.2d 212, 215 (Fla.1988). Mr. Yisrael’s trial occurred during early 2004. Therefore, the 2003 or 2004 Florida Evidence Code applies to the issues presented in this appeal. We reference the 2004 Code because there is no appreciable difference between the 2003 and 2004 versions with regard to the provisions involved in Yisrael.

. The business-records exception provides as follows:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness. The term ''business” as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

. The Federal Rules of Evidence may provide persuasive authority for interpreting the counterpart provisions of the Florida Evidence Code. See Sikes v. Seaboard Coast Line R.R., 429 So.2d 1216, 1221 (Fla. 1st DCA 1983) (citing Charles W. Ehrhardt, A Look at Florida’s Proposed Code of Evidence, 2 Fla. St.U.L.Rev. 681, 682-83 (1974)).

. “The Department of Corrections shall be responsible for the inmates and for the operation of, and shall have supervisory and protective care, custody, and control of, all buildings, grounds, property of, and matters connected with, the coirectional system." § 945.04(1), Fla. Stat. (2001) (emphasis supplied).

. The public-records exception provides in pertinent part:
Records, reports, statements reduced to writing, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to matters which there was a duty to report, excluding in criminal cases matters observed by a police officer or other law enforcement personnel, unless the sources of information or other circumstances show their lack of trustworthiness. The criminal case exclusion shall not apply to an affidavit otherwise admissible under s. 316.1934 or s. 327.354.

. There is no trustworthiness issue in this case.